IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | : | Chapter 13 |
|     Daniel E. Rickabaugh | : | |
|         Debtor | : | Case No. 1:20-bk-3505-HWV |
| | : | |
| Rebecca F. Rickabaugh | : | |
|         Movant | : | Motion to Dismiss Case with Prejudice (#40); |
|     v. | : | Objection to Confirmation of Plan (#38) |
| Daniel E. Rickabaugh | : | |
|         Respondent | : | |

## **OPINION**

On April 27, 2021, Rebecca F. Rickabaugh ("Movant") filed an Objection to Confirmation of the Second Amended Chapter 13 Plan of Daniel E. Rickabaugh ("Debtor") asserting that it was not filed in good faith. ECF No. 38. The next day, on April 28, 2021, Movant filed a Motion for an Order Dismissing Debtor's Chapter 13 Case with Prejudice for lack of good faith under 11 U.S.C. § 1307(c)[1] (the "Motion to Dismiss" or "MTD"). A hearing on the Motion to Dismiss and the Objection to Second Amended Plan was held on May 26, 2021 where testimony was taken, and evidence was admitted into the record. Following the Hearing, the Court took both matters under advisement. The matters are now ripe for decision.

### I.     Jurisdiction

The Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1334(a). This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(1) and 157(b)(2)(A). This Opinion constitutes findings of fact and conclusions of law made pursuant to Federal Rule of Bankruptcy Procedure 7052 made applicable to contested matters by Federal Rule of Bankruptcy Procedure 9014.

---

[1] Unless otherwise noted, all future statutory references are to the Bankruptcy Code, 11 U.S.C. §101 et seq. (the "Bankruptcy Code")

1

## II.     Facts and Procedural History

Prior to initiating this bankruptcy case, Movant filed a Petition for Counsel Fees Pursuant to 53 PA. CONS. STAT. § 5339 (2019) (the "Fees Petition") against the Debtor in connection with a custody action (the "Custody Proceeding") in the Court of Common Pleas for Dauphin County (the "State Court"). MTD Ex. E, ECF No. 40-5. Shortly thereafter the State Court entered an order granting the Fees Petition and directing the Debtor to pay $4,179.00 to Movant (the "Attorney Fees") in monthly installments of $250.00 "plus 6% monthly interest until paid in full" (the "Fees Order"). MTD Ex. E, at 2, ECF No. 40-5. Approximately five-and-one-half years later, the State Court scheduled a contempt hearing to address the Debtor's non-payment of the Attorney Fees as required by the Fees Order (the "Contempt Hearing"). MTD Ex. F, ECF No. 40-6. On December 9, 2020, eight days before the Contempt Hearing, the Debtor filed this voluntary Chapter 13 Bankruptcy Petition under section 301 of the Code (the "Petition"). The Debtor also filed his schedules, statements, and other documents as required by § 521 of the Code (the "Schedules") and a Chapter 13 Plan as required by § 1321 (the "Plan"). Because the filing of a bankruptcy petition generally operates as a stay of the continuation of most judicial proceedings against a debtor, the Contempt Hearing was stayed pending resolution of this case. 11 U.S.C. § 362(a).

The Debtor filed an Amended Plan on December 17, 2020 (the "Amended Plan"). ECF No. 15. On January 21, 2021, the Debtor appeared at a meeting of creditors as required by § 341(a) of the Code (the "Meeting of Creditors"). Movant, through her counsel, also appeared at the Meeting of Creditors and questioned the Debtor regarding the truthfulness of the information contained in his Petition and Bankruptcy Schedules. MTD at ¶ 5, ECF No. 40. Also on January 21, 2021, the Movant filed Proof of Claim No. 4 and Proof of Claim No. 5 (collectively, the

2

"Claims"). Proof of Claim No. 4 asserted a priority unsecured claim under § 507(a)(1) in the amount of $13,825.31 for past due child support. Proof of Claim ("POC") No. 4. Proof of Claim No. 5 asserted a second priority unsecured claim in the amount of $20,727.84 for the Attorney Fees due pursuant to the Fees Order. POC No. 5.

On January 26, 2021, Movant filed an Objection to Confirmation of the Debtor's Amended Plan (the "Objection to Amended Plan") asserting that the Amended Plan had not been proposed in good faith for several reasons, including the failure to disclose: (1) the "active" sole proprietorships known as "Rickabaugh's Electric" and "DJ Penn State Dan;" (2) the ownership and transfer of business electronics, machinery, equipment and tools in connection with those businesses; (3) income derived from those business from 2018 through the date of filing; (4) the ownership of household goods and furnishings; and (5) the pending state court litigation and certain charitable donations. Objection to Amended Plan ("OBJ.") at ¶ 10, ECF No. 22. Objection to Amended Plan ("OBJ.") at ¶ 10, ECF No. 22.

The Debtor filed a Second Amended Plan pursuant to § 1323(a) on March 31, 2021 (the "Second Amended Plan"). ECF No. 28. The Debtor also filed objections to Proof of Claim No. 4 ("Objection to POC 4" or "OBJ to POC 4") and Proof of Claim No. 5 ("Objection to POC 5" or ("OBJ to POC 5"). ECF Nos. 29, 30. Next, and to address some of the concerns raised by Movant in her Objection to Amended Plan, the Debtor filed an Amended Chapter 13 Statement of Current Monthly Income and Calculation of Commitment Period on April 1, 2021.[2] ECF No. 31. The Debtor also filed an Amended Statement of Financial Affairs on April 2, 2021[3] and a

---

[2] The Amended Means Test included additional income not previously disclosed from the Debtor's business operations in the monthly amount of $38.34 and excluded other monthly compensation previously reported in the amount of $758.33. Am. MT, ECF No. 31.

[3] The Amended SOFA included additional information not previously disclosed regarding year to date gross income from a business in the amount $36,000.00; increased gross income from the operation of a business from $5,469.00 to $19,125.00 in 2019 and from $3,683.00 to $19,566.00 in 2018; a recharacterization of "other income" received year to date from "Unemployment Compensation" to "PUA see §101(10A)(B)(ii)"; disclosure of clothing, snack food, and

3

second Amended Statement of Financial Affairs on May 27, 2021.[4] ECF 33, ECF No. 50. On April 8, 2021 the Debtor filed Amendments to his Schedules A/B – Property and Schedule C - Property You Claim as Exempt.[5] ECF No. 36.

On April 27, 2021 the Movant filed an answer to the Objection to POC 5.[6] The Movant also filed her Objection to Confirmation of the Debtor's Second Amended Chapter 13 Plan (the "Objection to Second Amended Plan") articulating the same grounds asserted in the Objection to Amended Plan. 2OBJ., ECF No. 38. On April 28, 2021, Movant filed her Motion for an Order Dismissing Debtor's Chapter 13 Case with Prejudice again asserting the same grounds as in her Objection to Amended Plan and the Objection to Second Amended Plan. MTD, ECF No. 40. On April 30, 2021, the Debtor responded to the Motion to Dismiss by filing an Objection thereto along with a Request for Court Intervention (the "Objection to Motion to Dismiss").[7] OBJ MTD, ECF No. 41. A hearing on the Objection to POC 5, the Motion to Dismiss, Confirmation of the Second Amended Plan, and the responses filed to each was held on June 3, 2021. Following oral argument on the Objection to POC 5, the Court entered an order disallowing the claim as a priority claim and reclassifying it as a general unsecured claim. ECF No. 52. A hearing on the

---

toiletries given by Debtor during 2020 to his elderly mother who resides in a nursing home with a total value of $721.51; disclosure of gifts or charitable contributions with a total value of more than $600.00 given to Central Dauphin Cheer made by Debtor's non-debtor spouse to her daughter's (Debtor's stepdaughter) cheerleading group; the disclosure of a slot machine and DJ equipment owned by a relative but in the possession of the Debtor having a value of $1,800.00; and the disclosure of a push lawnmower owned by his mother-in-law but in the possession of the Debtor having a value of $500.00. Am. SOFA, ECF No. 33.

[4] The Second Amended SOFA also included additional information not previously disclosed regarding the Custody Action and the sole proprietorship business names of Rickabaugh's Electric and DJ Penn State Dan. 2nd Am. SOFA, ECF No. 50.

[5] The Amended A/B disclosed for the first time a 2006 Mazda Tribute (listed as Stepdaughter's car but jointly titled in Debtor and non-filing spouse's name) valued at $4,168.00; household goods consisting of plastic folding card tables, lighting, speakers, etc. with a total value of $780.00, an interest in the LLC known as Rickabaugh's Electric LLC (formed post-petition) valued at $0.00; and an interest in three separate insurance policies, each with a surrender or refund value of $0.00. Am. A/B&C, ECF No. 36.

[6] The Movant did not file an answer to the Objection to POC 4. Because no response was filed, an order sustaining that objection was entered by the Court on May 7, 2021. ECF No. 45.

[7] The Objection to the Motion to Dismiss generally asserts that the Motion to Dismiss was filed for the improper purpose of scaring and overwhelming the Debtor and to force the voluntary dismissal of the case so that "movant can more easily attempt to collect on debts." OBJ MTD, at 1, ECF No. 41.

remaining pleadings then took place where testimony was taken and evidence was placed into the record. Following the hearing, this Court took the Motion to Dismiss and the Objection to Second Amended Plan under advisement and continued the hearing on confirmation of the Debtor's Second Amended Plan to a later date.

### III. Discussion

Movant generally argues that the Debtor's voluntary chapter 13 petition was not filed in good faith and must therefore be dismissed for cause pursuant to § 1307(c), MTD, ECF No. 40, and that the Debtor's Second Amended Plan was not filed in good faith and should therefore be denied pursuant to § 1325(a)(3). 2OBJ, ECF No. 38. Movant's primary argument in both pleadings is that Debtor knowingly and fraudulently concealed property, made false oaths or statements, made false declarations under penalty of perjury, and engaged in behavior indicative of a bankruptcy fraud scheme. MTD at ¶ 16, ECF No. 40. For the reasons that follow, the Court will overrule the Objection to Second Amended Plan and deny the Motion to Dismiss.

When determining whether a Chapter 13 plan was proposed in good faith, bankruptcy courts in this Circuit apply the same analysis used for determining whether a Chapter 13 bankruptcy petition was filed in good faith. *Hackerman v. Demeza,* 576 B.R. 472, 479 (M.D. Pa. 2017) (citing *e.g., In re McKinney*, 507 B.R. 534, 551–52 (Bankr. W.D. Pa. 2014); *In re Konowicz*, 470 B.R. 725, 730 (Bankr. D.N.J. 2012); *In re Parke*, 369 B.R. 205, 207 (Bankr. M.D. Pa. 2007); *In re Jensen*, 369 B.R. 210, 232–33 (Bankr. E.D. Pa. 2007). A bankruptcy filing made in bad faith may be dismissed "for cause" under § 1307(c). *In re Myers*, 491 F.3d 120, 125 (3d Cir. 2007) (citing *In re Lilley*, 91 F.3d 491, 496 (3d Cir. 1996)). To determine if a bankruptcy filing has been made in bad faith, a bankruptcy court must look to the "totality of the circumstances" and may consider a wide range of factors including: (1) the nature of the debt; (2)

5

the timing of the petition; (3) how the debt arose; (4) the debtor's motive in filing the petition; (5) how the debtor's actions affected creditors; (6) the debtor's treatment of creditors both before and after the petition was filed; and (7) whether the debtor has been forthcoming with the bankruptcy court and the creditors. *Hackerman v. Demeza*, 576 B.R. 472, 479 (M.D. Pa. 2017) (citing *In re Myers*, 491 F.3d at 125; *In re Lilley*, 91 F.3d at 496) (additional citations omitted)).

A dismissal based upon lack of good faith "should be confined carefully and is generally utilized only in those egregious cases that entail concealed or misrepresented assets and/or sources of income, lavish lifestyles, and intention to avoid a large single debt based upon conduct akin to fraud, misconduct or gross negligence." *In re Tamecki*, 229 F.3d 205, 207 (3d Cir. 2000) (citing *In re Zick*, 931 F.2d 1124, 1129 (6th Cir. 1991)). Egregious conduct is conduct that is "extremely or remarkably bad." *Egregious*, Merriam-Webster's Collegiate Dictionary (11th ed. 2003); *Egregious*, Black's Law Dictionary (8th ed. 1999). The word "egregious" is most synonymous with the word "flagrant," which is defined as conduct "so obviously inconsistent with what is right or proper as to appear to be a flouting of law or morality." *Flagrant*, Merriam-Webster's Collegiate Dictionary (11th ed. 2003). Once a creditor makes a *prima facie* showing that a case was filed in bad faith, the burden shifts to the debtor to prove by a preponderance of the evidence that the Chapter 13 case was filed in good faith. *In re Demeza*, 576 B.R. at 477, *aff'd sub nom. Hackerman v. Demeza*, 576 B.R. 472 (citing *Alt v. U.S. (In re Alt)*, 305 F.3d 413, 420 (6th Cir. 2002); *In re Scotto–Diclemente*, 459 B.R. 558, 562 (Bankr. D. N.J. 2011) (citing *In re Tamecki*, 229 F.3d 205 at 207)).

With the above standards in mind, the Court will now examine each of the above factors as they apply to this case.

6

### A. The Nature of the Debt and How the Debt Arose

The Court first considers whether the debt resulted from bad acts or intentions of the Debtor. *In re Manfredi*, 434 B.R. 356, 359–60 (Bankr. M.D. Pa. 2010) (citing *e.g.*, *In re Myers*, 491 F.3d at 126) (additional citations omitted). Ordinarily, for a debt to take on bad faith significance "there must be some additional aggravating factors at issue, such as the debtor's concealment of assets, falsification of records, transfer of assets beyond the reach of creditors or some other behavior designed to interfere with the 'orderly judicial process for resolution of ... debt.'" *In re Jensen*, 369 B.R. 210, 235 (Bankr. E.D. Pa. 2007). Here, Movant asserts that POC 5 originated from the "Debtor's vexatious and bad faith conduct, that directly resulted in unnecessary attorney fees to Movant" during the Custody Proceeding. MTD at ¶ 30, ECF No. 40. Aside from the Fees Order itself, however, Movant offered no testimony or other evidence to suggest the existence of any aggravating factors.

The Court does not believe that the award of attorney fees pursuant to 53 PA. CONS. STAT. § 5339 (2019) is *per se* evidence of bad faith under §§ 1307 and 1325(a)(3) of the Bankruptcy Code. Such a conclusion runs counter to the totality of the circumstances test set forth above. It also runs counter to other well-established principles of bankruptcy law. See *In re McKinney*, 507 B.R. 534, 553 (Bankr. W.D. Pa. 2014) ("[f]iling bankruptcy and proposing a plan as a result of debt arising from the dissolution of the marriage by two parties availing themselves of the state statutory divorce scheme, alone, cannot be considered bad faith."); see also *In re TLCS, Inc.*, 1990 WL52053 (Bankr. E.D. Pa. April 20, 1990) (holding that it is not "bad faith" to obtain a breathing space from litigation in other forums). Even assuming the Fees Order could satisfy the Movant's initial burden of production, the Court finds that the Debtor has met his burden of persuasion that his actions were undertake in good faith. *See* MTD Hr'g. Tr. 88:15–

7

89:5, ECF No. 54. Specifically, the Debtor testified that he filed a Petition to Modify because he wanted more time with his children but reluctantly withdrew it for financial reasons after learning that he would have to travel to Delaware to avail himself of additional time with his children. *Id.* at 88:15–89:5. The Movant did not offer any contrary evidence. The Debtor's testimony was credible and established that his actions leading up to and including the withdrawal of his petition to modify custody were the result of an honest intention to seek and obtain additional time with his children. Consideration of this factor does not support a finding of bad faith.

### B. The Timing of the Petition and the Debtor's Motive in Filing the Petition

The Court next considers the timing of the filing of the petition and the Debtor's Motive. Movant first asserts that "Debtor filed his Chapter 13 Petition on December 9, 2020, just eight (8) days prior to the Contempt Hearing with respect to the debt underlying Proof of Claim #5-1." MTD at ¶ 31–32, ECF No. 40. Movant next asserts that the Debtor's Schedules do not disclose the pending Contempt Hearing or "any other pending proceedings (i.e. collection, execution, garnishments, or emergency)" which she suggests is evidence of the Debtor's bad faith intent to "continue to circumvent his Domestic Support Obligations." MTD at ¶ 33, ECF No. 40. Movant also asserts that the Debtor lists a total of "fifteen (15) creditors totaling only $26,443.70 in unsecured debt on Schedule F, $20,727.84 of which is attributable to Movant's Proof of Claim #5-1." MTD at ¶ 33, ECF No. 40. The Movant offers the foregoing assertions as circumstantial evidence that the Debtor's Petition was likely motivated by an improper desire to thwart her claim rather than by a legitimate reorganization purpose. MTD Hr'g. Tr. 41:12-23, ECF No. 54. For the following reasons, the Court finds that these allegations do not demonstrate the requisite bad faith.

Regarding timing, a bankruptcy filing during the pendency of related state court litigation is not necessarily evidence of bad faith. *In re Myers*, 491 F.3d at 125. (citing *In re James Wilson Assocs.,* 965 F.2d 160, 170–71 (7th Cir. 1992)); accord *In re Kerschner*, 246 B.R. 495, 499 (Bankr. M.D. Pa. 2000); *In re Zaver*, 520 B.R. 159, 167 (Bankr. M.D. Pa. 2014). Generally, Bad faith exists "'where the purpose of the bankruptcy filing is to defeat state court litigation without a reorganization purpose.'" *In re Myers*, 491 F.3d at 125 (quoting *In re Dami,* 172 B.R. 6, 10 (Bankr. E.D. Pa. 1994)). Bad faith has thus been found in cases where the purpose of the bankruptcy filing is solely to "thwart a creditor claim rather than making an honest effort to pay debts[.]" *In re Cartwright*, No. 1-13-BK-03952MDF, 2014 WL 2574502, at *5 (citing *In re Fleury*, 294 B.R. 1, 8 (Bankr. D. Mass. 2003)).

Regarding motive, it is not bad faith to avail oneself of a particular protection in the Code – such as the automatic stay – because Congress enacted such protections with the expectation that they would be used. *In re Integrated Telecom Express, Inc.*, 384 F.3d 108, 127 (3d Cir. 2004) (citing *In re James Wilson Assocs.,* 965 F.2d 160 at 170 ("It is not bad faith to seek to gain an advantage from declaring bankruptcy–why else would one declare it?"); *In re PPL Enters*, 228 B.R. 339 (Bank. D. Del.1998) ("it is not 'bad faith' for debtors to file for bankruptcy in order to take advantage of a particular provision of the Code"). Moreover, "it is not unusual, and it is not indicative of bad faith *per se*, for a debtor's largest unsecured creditor to be an ex-spouse to whom a divorce-related debt is owed." *In re Cartwright*, No. 1-13-BK-03952MDF, 2014 WL 2574502, at *6, (citing *Liebowitz v. Hurwitz (In re Hurwitz),* Case No. 1–03–03372, Adv. No. 1–03–00198, p. 6 (Bankr. M.D. Pa. slip op. September 30, 2004)).

The Court finds that under the circumstances presented in this case, Movant has not met her initial burden of production regarding this element. Aside from general references to the date

of the Petition, the date of the Contempt Hearing, the failure to disclose the Custody Proceeding, and an assertion that she is the largest creditor in this case, Movant offered no evidence in support of her assertion that the timing or motive of the Debtor's Petition supports a finding of bad faith. Even if that were not the case, *see In re Kerschner*, 246 B.R. at 499 (holding that in the context of contempt proceedings, filing relief the day before a contempt hearing is strong evidence that the Debtor filed to defeat state court litigation, which violates the spirit of the Code), the Debtor has nonetheless satisfied his burden of demonstrating that his Petition was filed in good faith.  The Debtor testified that he attempted to settle the debt associated with POC 5 prior to filing the Petition and that Movant refused his settlement offers. MTD Hr'g. Tr. 90:18–91:1, 170:15-22, ECF No. 54. The Debtor further testified that he is currently paying the entire debt associated with POC 4 outside of the bankruptcy proceeding in accordance with non-bankruptcy law. *Id.* at 122:3-16. The Debtor's testimony was credible and established to the satisfaction of this Court that his actions were the result of an honest intention to seek and complete a reorganization of his financial condition. The Court detected no ulterior motive. To the contrary, the Debtor clearly believes his actions to date are justifiable and in accordance with proper conduct. The Debtor's belief in this regard is not unreasonable. Consideration of this factor does not support a finding of bad faith.

    C. **How the Debtor's Actions Affected Creditors**

The Court next considers how the Debtor's actions affected creditors. This inquiry often comes down to a question of whether the filing is fundamentally fair to creditors and in a manner that complies with the spirit of the Code. *Matter of Love*, 957 F.2d 1350, 1357 (7th Cir. 1992) (citing *In re Schaitz,* 913 F.2d 452, 453 (7th Cir.1982) ("the most fundamental and encompassing [circumstance] is whether the debtor has dealt fairly with his creditors.")).

In support of this factor, Movant claims only that "[t]he filing of the Debtor's Chapter 13 Petition stayed Movant's Contempt proceeding" and that "[a]ll other creditors were stayed in any collection activity." MTD at ¶ 36–37, ECF No. 40. Aside from these references to the normal impact of the automatic stay in most bankruptcy filings, Movant offered no evidence to suggest that the Debtor's actions have been fundamentally unfair. To the contrary, the Court observes that the Debtor's Second Amended Plan proposes to pay all allowed priority claims pursuant to § 1322(a)(2) and all allowed secured claims in accordance with § 1325(a)(5). ECF No. 28. It also proposes to make distributions to allowed general unsecured claims as required by § 1325(a)(1) and (4) of the Bankruptcy Code. Consideration of this factor therefore does not support a finding of bad faith.

### D. Treatment of Creditors Before and After the Petition was Filed

The Court next examines whether the Debtor took actions to frustrate creditors rather than to reorganize and treat creditors fairly. *In re Manfredi*, 434 B.R. at 361. Actions meeting this factor may include the dissipation, concealment, or other transfer of assets for the purpose of placing them beyond the reach of creditors, *see In re Myers*, 491 F.3d at 126; *In re Kerschner*, 246 B.R. at 498–499, or filing multiple bankruptcy petitions for the sole purpose of frustrating a creditor's efforts to exercise its state law remedy. *In re LeGree*, 285 B.R. 615, 619 (Bankr. E.D. Pa. 2002).

Here, the Movant complains that pre-petition the Debtor: (1) paid his child support sporadically and was in arrears in the amount of $13,420.81 at the time of filing; (2) made no payments to Movant regarding the Attorney Fees causing them to balloon from $4,179.00 to $20,727.84 in just over five years; and (3) the Debtor engaged in excessive spending at the expense of creditors during the calendar year 2020 by (a) taking 4 vacations, one to Florida and

11

three to the Atlantic Seashore, and (b) spending $4,558.04 to eat out, $6,674.71 at grocery stores, and $5,784.50 at convenience stores.[8] MTD ¶¶ 38; 41–42, 46–47, ECF No. 40.

The Court finds that Movant's contentions are not supported by the record and do not demonstrate the requisite bad faith. For example, the Debtor did initially make payments to Movant in connection with the Attorney Fees. MTD Hr'g. Tr. 127:7-8, ECF No. 54. Additionally, the Debtor also offered to settle the entire Attorney Fees claim for the sum of $7,000.00, which Movant refused. *Id.* at 90:18–91:1. Moreover, the record demonstrates that the Debtor took only one vacation to the Atlantic Seashore during 2020 – not three as alleged – and that was to go camping for a few days with his family "where it might have been $12 a night to put up a tent." *Id.* at 132:18-19. When asked about the 2020 vacation to Florida, the Debtor testified as follows:

> I would explain that my stepdaughter lost her father because he committed suicide right on the front porch of the house. So she gets a death benefit, and that's strictly for her. There was - - on her 16th birthday, which was right before and, I mean maybe a week before the pandemic hit, [she] wanted to go - - she didn't want a party, she didn't want a car, she - - I mean, really anything, she wanted just a trip to Florida for her birthday. So her mother, between her tax return and her death benefit, took her daughter and I to Florida for her birthday.

*Id.* The Debtor also testified that the Florida vacation lasted for three days and two nights – and that long only because their flight coming home was canceled. *Id.* at 173:18-19. Finally, regarding the Movant's claim that the "Debtor and his family just recently enjoyed another Florida vacation" in March 2021, the Debtor testified that this trip was for a funeral and that the hotel was paid for by his mother-in-law. *Id.* at 133:12-14. The Debtor's testimony regarding these matters was credible and uncontested.

---

[8] Movant claims these amounts may be higher "as Debtor's later year 2020 spending is clouded by his penchant for classifying his previously listed personal expenses, such as convenience store purchases, as business expenses." MTD ¶¶ 41–42, 46–47, ECF No. 40.

The Movant further complains that post-petition the Debtor: (1) paid his child support sporadically; (2) incorrectly listed the child support obligation at $0.00 instead of the $13,420.81 owed; and (3) the Second Amended Plan lacks good faith because it: (a) proposes to pay child support outside of the plan, even though the Debtor "has been consistently delinquent post-petition on these obligations since filing his Chapter 13" Petition; (b) makes no provision for payment of POC 5 which Movant asserts is entitled to priority treatment under § 507(a)(1)(A); (c) proposes "to pay nothing to unsecured creditors and is in fact, underfunded and not feasible; and (d) proposes "only a nominal payment of $138.00 per month for sixty (60) months, with more than 54% of those funds earmarked for his counsel's fees." MTD ¶¶ 38–40, 43–45, ECF No. 40.

The Court finds that the record credibly establishes that the Debtor is current with his post-petition child support obligation and that he has not been sporadic with his payments. *Id.* at 126:5-12. Movant offered no contrary evidence. While there is evidence the Debtor was in arrears on his pre-petition payments, considering the totality of the circumstances, the Court does not find that the Debtor's pre or post-petition treatment of creditors demonstrates bad faith. With respect to the Second Amended Plan, the Court rejects the Movant's argument because, apart from underfunding and feasibility, each of the above provisions is expressly allowed by the Bankruptcy Code and therefore cannot constitute evidence of bad faith. The proposal to pay monthly child support and arrears outside of a plan is authorized under § 1322(a)(2) of the Bankruptcy Code. *See also* 11 U.S.C. § 1322(a)(4).

The Second Amended Plan provides that the "[m]onthly child support and arrears will be paid outside the plan to DCDR pursuant to Domestic Support Court Order and per 11 U.S.C. § 1322(a)(4)." ECF No. 28. Further, as set forth above, the Court sustained the Debtor's Objection

13

to POC 5 at the Hearing and reclassified it as a general unsecured claim. ECF No. 52. Because of this, the Movant is not entitled to priority treatment of POC 5 in the Second Amended Plan pursuant to § 507(a)(1)(a). Finally, the Third Circuit has "considered and rejected the argument that a chapter 13 plan violates the good faith standard of § 1325(a)(3) merely because it provides for nominal payments to unsecured creditors." *Hackerman v. Demeza*, 576 B.R. 472, n.5 at 479 (quoting *In re Jensen*, 369 B.R. 210, 232 n.56 (Bankr. E.D. Pa. 2007) (citing *In re Hines*, 723 F.2d 333 (3d Cir. 1983)). Accordingly, the distribution to general unsecured creditors proposed by the Second Amened Plan is not inconsistent with good faith.

Further, the Court disagrees with Movant's assertions that the Second Amended Plan is underfunded and not feasible. The monthly payment proposed by the Second Amended Plan is entirely consistent with the Debtor's Amended Means Test and his Schedules I and J. ECF Nos. 1, 31, and 36. Movant offered no evidence to refute this. Also, the Movant failed to introduce any evidence supporting her claim that the plan is not feasible. This claim was refuted by the Debtor's testimony in any event. MTD Hr'g. Tr. at 129:1-22, ECF No. 40. The Movant's remaining allegations are likewise without support in the record or are generally unpersuasive to this Court and are thus found to be without merit.

This factor weighs against granting the Motion to Dismiss.

### E. Whether the Debtor has been Forthcoming with the Bankruptcy Court and the Creditors

The last factor requires the Court to examine whether the Debtor has been forthcoming with the Bankruptcy Court and creditors. "The integrity of the bankruptcy process rests upon a debtor's full and honest disclosure of all required information." *In re Gonyer*, 383 B.R. 316, 322 (Bankr. N.D. Ohio 2007) (citing *e.g., In re Gotham,* 327 B.R. 65, 78 (Bankr. D. Mass. 2005). Accordingly, "to the extent reasonably possible, a debtor seeking the protection of this Court

must file bankruptcy schedules which are both thorough and accurate." *Gonyer,* 383 B.R. 316, 322 (citing *In re Bayless,* 78 B.R. 506, 509 (Bankr. S.D. Ohio 1987). This duty continues throughout the duration of the case. *Id*. (citing FED. R. BANKR. P. 1009). However, "the existence of an inaccuracy in a debtor's schedules will not, standing alone, warrant any adverse action so long as the inaccuracy is inadvertent." *Id*. (citing *In re McVay,* 345 B.R. 846, 849 (Bankr. N.D. Ohio 2006). "The reality is that mistakes do occur." *Id.* Thus, in the absence of evidence showing that the omission of assets or other inaccuracies in a debtor's schedules was more than an honest error or good-faith mistake, such omissions or other inaccuracies do not demonstrate bad faith. *See Kerschner*, 246 B.R. at 499. A good-faith mistake cannot signal bad faith.[9] As with the other factors, most of Movant's averments in support of this factor are either unsupported or are contradicted by the record. The remaining omissions and inaccuracies appear to be nothing more than honest errors, good-faith mistakes, or matters that do not rise to the level of bad faith.

The Movant first asserts that the Debtor failed to disclose "the active sole proprietorship known as DJ Penn State Dan." MTD at ¶ 51b., ECF No. 40. In support of this claim, Movant asserts that the "Debtor maintains an active FaceBook page for this business, documents his active engagement since at least March 2017" and "[i]n 2020 . . . he generated in excess of $7,700.00 from this business." *Id.* at ¶ 51a. The Debtor credibly testified that he has not operated the business known as DJ Penn State Dan for profit since March of 2020. *Id.* at 98:13-20. The Debtor also testified that he presently has no interest in returning to work as DJ Penn State Dan. *Id.* at 99:1-6.  The Debtor's testimony on these matters was credible and established to this Court's satisfaction that he did not actively operate the sole proprietorship known as DJ Penn

---

[9] The term "good-faith mistake" is defined as: "An honest error that involves neither cynical sabotage nor subconscious bias against accomplishing something. — Also termed *honest error*." *Good-Faith Mistake*, Black's Law Dictionary (11th ed. 2019)

State Dan at time of the Petition and that he had not operated for profit under this name since March 2020 due to the COVID-19 pandemic. The Movant presented no evidence to the contrary. Accordingly, the Movant has failed to meet her initial burden of production regarding this allegation.

Movant next asserts that the Debtor failed to disclose all his household goods and furnishings or his business electronics, machinery, equipment, and tools in connection with both Rickabaugh's Electric and DJ Penn State Dan. The Debtor credibly testified that he does not own any undisclosed business electronics, machinery, equipment, and tools in connection with either Rickabaugh's Electric or DJ Penn State Dan. *Id.* at 144:2–147:22, 138:1-15. The Debtor also testified that the expenditures identified by Movant on his joint PSECU checking account do not represent purchases of undisclosed electronics, machinery, equipment, or tools. *Id.* at 198:23–199:1. Likewise, the Debtor credibly testified that he did not own any undisclosed household goods or furnishings. *Id.* at 151:24–152:14. Aside from incidental references to certain "significant expenditures" at hardware stores and "at various retail establishments" including Lowes, Home Depot, At Home, Target, WalMart, Dick's Sporting Goods, Harbor Freight, and Tractor Supply found on the Debtor's joint PSECU checking account, the Movant offered no evidence to support her assertions and she therefore failed to meet her burden of production on this factor.

Movant also asserts that the "Debtor, in an attempt to conceal his businesses, misrepresented his self-employment status by listing 'anticipated income from employment' and 'new job' on Schedule I." MTD at ¶ 51g, ECF No. 40. According to the Movant, "[t]hese two statements were designed to mislead parties away from any belief that Debtor was actively engaged in two business entities." *Id.* The Movant, however, does not explain how the Debtor

16

would be advantaged by this behavior. In view of the Debtor's initial disclosure of the potential for increased income it is hard to imagine any material advantage that he might secure by doing so. The Debtor credibly testified that he has made no effort throughout his bankruptcy to conceal or mischaracterize his income from the electrical services he provides. *Id.* at 153:7-21. Moreover, as described above, the Debtor's testimony establishes that he was not doing business as DJ Penn State Dan at the time he filed his Petition. *Id.* at 152:24–153:6. The Debtor also testified that he has not earned income reportable on Schedule I as DJ Penn State Dan since March or April of 2020. *Id.* at 98:13–99:6. Aside from a passing reference to the Debtor's Joint checking account, the Movant offered insufficient evidence to support her assertions to the contrary.

Movant additionally argues that the Debtor has: (1) a history of making false representations to a judicial body; (2) wrongfully failed to disclose his spouse's federal tax refund on Schedule I; and (3) taken little to no action to correct nondisclosures on his Schedules. MTD ¶ 51h., 54–55, ECF No. 40. Movant offered a document referenced as "Conference Notes- Other Information for June 19, 2019 DSO Conference" ("Exhibit I") in support of the first allegation above. In support of the second allegation, Movant avers that "Debtor's current spouse received, on February 26, 2020, a Federal Tax Refund in the amount of $2,119.00. Debtor has omitted this sum from the calculation on Schedule I." *Id.* No other evidence was offered in support of these assertions.

The Debtor provided credible testimony refuting Movant's assertion that he has a history of false representations to a judicial body. MTD Hr'g. Tr. 111:22–113:17, ECF No. 54. Likewise, Movant's assertion that it is bad faith for the Debtor to fail to disclose his spouse's federal tax refund on Schedule I is not well-grounded in the law. A Debtor's "current monthly

17

Case 1:20-bk-03505-HWV    Doc 64    Filed 08/10/21    Entered 08/10/21 15:03:18    Desc
Main Document    Page 17 of 19

income does not include *all* the income of the non-debtor spouse, but rather only amounts expended on a regular basis for household expenses." *In re Quarterman*, 342 B.R. 647, 651 (Bankr. M.D. Fla. 2006). It may well be, then, that Debtor's Spouse's tax refund is irrelevant to Schedule I. Finally, while the Court does have concern over the degree of care and forthrightness undertaken to initially complete the Schedules, the docket in this case demonstrates the significant efforts made by the Debtor to amend his Schedules as necessary to fulfill his obligation to submit bankruptcy schedules that are both thorough and accurate. *See* ECF Nos. 31, 33, 36, 50.

The Court finds that the following exchange is credible and demonstrates that the Debtor's conduct in matter this was not taken in bad faith:

> Counsel: And at the time of filing the petition, admittedly, there were some errors on it. We didn't include a contempt proceeding, I think our office might have characterized your self-employment as wages. But it's your testimony that those were errors or - - that you've tried to correct those to the extent possible.
>
> Debtor: And we did.

*Id.* at 103:4-10; *see also id.* at 153:7-16. When asked by the Court if he reviewed the Schedules carefully before verifying their accuracy and truthfulness, the Debtor responded as follows:

> I reviewed them to the best, yes, that I could. I – I want to sit here and say that I thought I understood everything that I was reading, but I guess in my situation, I put just a lot of trust into the attorney of putting everything together and saying – I mean this is in my mind, thinking that I put a lot of trust in the attorney. I gave her all the information she asked me for, questions she asked me, everything, and she put it all in a piece – these papers and everything. And I just put a lot of trust into – if she asked me this stuff, I answered this thing, you know? And I answered it the best I did. And when she gave me the thing to sign, I – obviously I'm not an attorney, and there's a lot of things in there I don't understand, so I just assumed – I read as much of it as I could, and understood what I could, and then signed it.

*Id.* at 215:3-17 May 26, 2021. When asked by the Court whether he believed he was disclosing all his income at the time he verified his Petition and Schedules, he credibly responded: "I did."

18

*Id.* at 215:3-20. Likewise, when asked by the Court if he thought his original Petition and Schedules had disclosed all his assets, he responded by stating "Yeah, I disclosed everything that I thought, yeah, that I have, or was supposed to, everything. I – I really thought I was very forthcoming, I really did, Your Honor." *Id.* at 216:14-16. Finally, the Debtor provided credible testimony regarding the extensive efforts he has made to satisfy the Movant's concerns regarding his Schedules. *Id.* at 101:25–102:3; *see Id.* at 102:6–103:10.

The Debtor's testimony described above, and throughout the hearing in this matter, was credible and not suggestive of bad faith. The Debtor believed that his Schedules were thorough and accurate when he verified them. The Court further finds the Debtor's efforts to fulfill his duties under the Code appear to be reasonable under the circumstances.[10] The Court does not discern any intent to defraud or to seek an unconscionable advantage.

### IV. Conclusion

For the foregoing reasons, the Court finds that the Movant has failed to satisfy her burden of demonstrating that the Debtor has acted in bad faith. Accordingly, the Motion to Dismiss is denied and the Objection to Second Amended Plan is overruled.

An appropriate Order will follow.

Dated: August 10, 2021

By the Court,

*/s/ Henry W. Van Eck*

Henry W. Van Eck, Chief Bankruptcy Judge (CD)

---

[10] The Court also is mindful that the schedules may have been completed during the significant restrictions imposed by COVID-19, including the inability for attorneys and clients to meet in person. See *id.* at 103:11–104:5.

19

Case 1:20-bk-03505-HWV    Doc 64    Filed 08/10/21    Entered 08/10/21 15:03:18    Desc
Main Document    Page 19 of 19